NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| VISION PHARMA, LLC, <br><br> Plaintiff, <br><br> v. <br><br> SUNRISE PHARMACEUTICAL, INC., <br><br> Defendant. | Civil Action No.: 2:13-cv-04692 <br><br><br> OPINION |

**CECCHI, District Judge.**

## I. INTRODUCTION

This matter comes before the Court on the motion of Defendant Sunrise Pharmaceutical, Inc. ("Defendant") to dismiss Plaintiff Vision Pharma, LLC's ("Plaintiff") complaint. (ECF No. 72). The Court held oral argument on this matter ("Tr."). For the reasons set forth below,[1] Defendant's motion to dismiss is granted in part and denied in part.

## II. BACKGROUND

Plaintiff "is a limited liability corporation organized and existing under the laws of the State of Florida, with its principal place of business located . . . [in] Florida[.]" (ECF No. 1 ¶ 1). "In or about 2009," Plaintiff alleges that it:

> [M]oved from New Jersey to Florida, dissolv[ed] the New Jersey entity and reincorporat[ed] as [a] Florida business entity of the same name in Florida. Both entities are identical but for their state of incorporation, including, *inter alia*, the entities' members, assets, and Federal Tax Identification Number. The members of the New Jersey entity formally transferred all rights, titles, and interests held by the New Jersey entity to the Florida entity (including, but not limited to, the rights at issue in the instant lawsuit) such that the Florida entity had effectively acquired the New Jersey entity in full.

---

[1] The Court considers any new arguments not presented by the parties to be waived. *See Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am.*, 927 F.2d 1283, 1298 (3d Cir. 1991).

(*Id.* ¶ 11). Subsequent to Defendant's filing of a motion to dismiss, which in part argues that Plaintiff lacks standing to bring its claims, Plaintiff clarified that the New Jersey entity did not actually formally transfer all of its rights, titles, and interests to Plaintiff, but instead maintains that such rights transferred automatically. (ECF No. 73 at 9-16).

Plaintiff's "general business model involves supplying drug products to pharmacy chains, wholesalers, and distributors." (ECF No. 1 ¶ 6). "Beginning in or about 2006," the New Jersey entity and Defendant "entered a series of supply agreements ("Supply Agreements"), under which [Defendant] manufactured Vision's[2] Drug Products." (*Id.* ¶ 8). Plaintiff is not a signatory to the Supply Agreements. (ECF No. 72-1 at 9).

Plaintiff alleges that the Supply Agreements "required [Defendant] to supply Vision with all necessary formulation and development documentation for the Drug Products and . . . [to] notify and supply Vision of any Form FDA 483 observations or warning letters received by [Defendant] from the U.S. Food and Drug Administration (FDA) . . . within five (5) business days of receiving same." (ECF No. 1 ¶ 10). On April 29, 2010, Plaintiff contends that "Vision received a warning letter from the FDA," in which the FDA "determined that the Drug Products Vision purchased from [Defendant were] adulterated within the meaning of 21 U.S.C. 351(a)(2)(B)." (*Id.* ¶¶ 12-13). Further, "[t]he FDA warned Vision that said Drug Products 'may not be introduced into or delivered for introduction into interstate commerce.'" (*Id.* ¶ 13). The April 29, 2010 letter also "referenced an FDA warning letter that was sent to [Defendant] on or about January 14, 2010 that specifically referenced the Drug Products and [Defendant's] prior manufacturing deficiencies

---

[2] Plaintiff does not distinguish between itself and the New Jersey entity in its complaint. For the purposes of this factual background, the Court will refer to Plaintiff's general use of "Vision" in its complaint; however, such references should not be construed as findings that Plaintiff and the New Jersey entity are one and the same, which will be discussed *infra*.

2

concerning the Drug Products as well as correspondence between [Defendant] and the FDA concerning [the] same occurring in July 2009, September 2009, and November 2009." (*Id.* ¶ 14). More specifically, the January 14, 2010 letter: (1) stated that Defendant "had committed multiple violations of the Current Good Manufacturing Practice (CGMP) regulations for finished pharmaceuticals;" (2) "noted that at least some of [Defendant's] CGMP violations had been revealed in earlier inspections and [Defendant] had failed to complete the corrective actions it promised to the FDA;" and (3) "concluded that [Defendant's] CGMP violations caused its [D]rug [P]roducts to be adulterated within the meaning of 21 U.S.C. 351(a)(2)(B)." (*Id.* ¶¶ 23-25, 28).

According to Plaintiff, Defendant, in violation of the Supply Agreements, did not: (1) timely advise Vision that it received letters or correspondence from the FDA; (2) provide Vision with responses to the FDA; or (3) supply Vision with formulation and development documentation for the Drug Products. (*Id.* ¶¶ 15-17, 26-27). Plaintiff contends that Defendant also failed to abide by its purported "verbal agreement that [Defendant] would advise Vision of any 483 observations or FDA warning letters." (*Id.* ¶ 18). On June 10, 2010, Plaintiff alleges that "Vision received a second letter from the FDA further reiterating its demand that Vision cease all distributions of the [Defendant's] Drug Products." (*Id.* ¶ 19).

Plaintiff also alleges that upon information and belief, Defendant: (1) manufactured and sold adulterated Drug Products "to Vision with knowledge of actual, or at least potential, adulteration problems;" (2) "willfully hid its FDA compliance issues from its customers, including Vision;" and (3) "had systematic and ongoing FDA compliance issues since as early as 2007." (*Id.* ¶¶ 20-22). Plaintiff filed this suit on August 5, 2013. (ECF No. 1).

## III. LEGAL STANDARD

### A. Subject Matter Jurisdiction

A court must grant a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) if the court determines that it lacks subject-matter jurisdiction over a claim. *See In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012). "Generally, where a defendant moves to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction, the plaintiff bears the burden of proving by a preponderance of the evidence that the Court has subject matter jurisdiction." *The Connelly Firm, P.C. v. U.S. Dep't of the Treasury*, No. 15-2695, 2016 WL 1559299, at *2 (D.N.J. Apr. 18, 2016) (citing *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000)).

The first step in evaluating a 12(b)(1) motion is determining whether the 12(b)(1) motion presents a facial attack or a factual attack. *See Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 357-58 (3d Cir. 2014). "A facial attack, as the adjective indicates, is an argument that considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court[.]" *Id.* at 358. "A factual attack, on the other hand, is an argument that there is no subject matter jurisdiction because the facts of the case[.]" *Id.* For facial attacks, "the court must consider the allegations of the complaint as true." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). For factual attacks, however:

> [T]here is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist.

*Id.*; *see also Hood v. Mercer-Bucks Orthopaedics*, No. 14-3427, 2014 WL 5465879, at *3 (D.N.J. Oct. 28, 2014) (holding that for factual attacks, courts are permitted "to weigh and consider facts 'outside the pleadings' to decide whether subject matter jurisdiction is proper") (citations omitted).

A motion to dismiss for lack of standing is properly brought pursuant to Federal Rule of Civil Procedure 12(b)(1), because standing is a matter of jurisdiction. *See Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007).

"Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Lance v. Coffman*, 549 U.S. 437, 439 (2007). One key aspect of this case-or-controversy requirement is standing. *See id.* "The standing inquiry . . . focuse[s] on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed." *Aichele*, 757 F.3d at 360 (alteration in original) (quoting *Davis v. FEC*, 554 U.S. 724, 734 (2008)).

To establish standing, a plaintiff must satisfy a three-part test, showing: "(1) an 'injury in fact,' i.e., an actual or imminently threatened injury that is 'concrete and particularized' to the plaintiff; (2) causation, i.e., traceability of the injury to the actions of the defendant; and (3) redressability of the injury by a favorable decision by the Court." *Nat'l Collegiate Athletic Ass'n v. Governor of N.J.*, 730 F.3d 208, 218 (3d Cir. 2013) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)), *abrogated on other grounds by Murphy v. Nat'l Collegiate Athletic Ass'n*, 138 S. Ct. 1461 (2018). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

**B.      Rule 12(b)(6)**

For a complaint to survive dismissal pursuant to Fed. R. Civ. P. 12(b)(6), it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

5

570 (2007)). In evaluating the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Furthermore, "[a] pleading that offers 'labels and conclusions' . . . will not do. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citations omitted).

## IV. DISCUSSION

### A. Subject Matter Jurisdiction

The Court treats Defendant's motion to dismiss for lack of standing as a factual attack, rather than a facial one, because Defendant argues that Plaintiff does not possess the rights of the New Jersey entity under the Supply Agreements. (ECF Nos. 72-1 at 9-14; 74 at 1-6; 97 at 2-7). The Court is therefore entitled to "weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Mortensen*, 549 F.2d at 891. Even in "the existence of disputed material facts," if the Court finds that Plaintiff has shown by a preponderance of the evidence that Plaintiff possesses the rights of the New Jersey entity, the Court may find that subject matter jurisdiction is proper.[3] *See id.*

Plaintiff avers that it is the successor-in-interest to the New Jersey entity under a de facto merger and/or mere continuation theory. (ECF No. 94 at 1). Plaintiff's argument that it possesses the rights of the New Jersey entity would be unnecessary but for the New Jersey entity's relocation to Florida. That is, Plaintiff has no written documentation evincing a merger of the New Jersey

---

[3] The Court notes that the parties agree that New Jersey state law applies to the question of subject matter jurisdiction. (ECF Nos. 94 at 2, 5 n.12; 95 at 1-2).

6

entity and Plaintiff, a liquidation of the New Jersey entity and a sale of assets to Plaintiff, or an assignment of the Supply Agreements from the New Jersey entity to Plaintiff. Nonetheless, the Court finds that the evidence in the record suggests that Plaintiff is the de facto successor or a mere continuation of the New Jersey entity.

Most often applied in the context of corporate successor liability, the de facto merger and mere continuation theories serve as exceptions to the general rule that "when a company sells its assets the purchasing company is not liable for the seller's debts and liabilities." *Luxliner P.L. Exp., Co. v. RDI/Luxliner, Inc.*, 13 F.3d 69, 73 (3d Cir. 1993).

> In determining whether a particular transaction amounts to a de facto consolidation or mere continuation, most courts consider four factors: (i) continuity of management, personnel, physical location, assets, and general business operations; (ii) a cessation of ordinary business and dissolution of the predecessor as soon as practically and legally possible; (iii) assumption by the successor of the liabilities ordinarily necessary for the uninterrupted continuation of the business of the predecessor; and (iv) continuity of ownership/shareholders.

*Glynwed, Inc. v. Plastimatic, Inc.*, 869 F. Supp. 265, 275-76 (D.N.J. 1994). "Not all of these factors need be present for a de facto merger or continuation to have occurred. The crucial inquiry is whether there was an 'intent on the part of the contracting parties to effectuate a merger or consolidation rather than a sale of assets.'" *Luxliner*, 13 F.3d at 73 (citations omitted).

Here, the record indicates that "the Members of [the] New Jersey [entity] continued as the three members of [Plaintiff] and held identical membership interests in [Plaintiff] as previously held in [the] New Jersey [entity]." (ECF No. 73 at 12). Moreover, "[d]uring and after the relocation, [Plaintiff] was operated as the same company that was originally organized as [the] New Jersey [entity] and the Members/officers continued to conduct the business with no change[.]" (*Id.*). Although "the state of organization and business address" changed, (*id.*), the

7

New Jersey entity and Plaintiff "had identical management, personnel, assets, and general business operations[.]" (ECF No. 94 at 4).

This is especially evident from the purchase orders, packing slips, and invoices exchanged between Plaintiff and Defendant, which, other than a change of address for Plaintiff from New Jersey to Florida, are virtually identical to the purchase orders, packing slips, and invoices exchanged between the New Jersey entity and Defendant. (*See generally* ECF Nos. 72-12; 72-13; 72-17 (all also showing that Plaintiff retained the name "Vision Pharma LLC" from the New Jersey entity)). In fact, on September 1, 2009, Defendant sent a packing slip and invoice to Plaintiff at its Florida address. (ECF Nos. 72-13 at 97; 72-17 at 53). On October 9, 2009, Defendant did the same. (ECF Nos. 72-13 at 99; 72-17 at 54). Nothing in the record indicates that Defendant ever questioned Plaintiff's identity or objected to the New Jersey entity's relocation to and reincorporation in Florida. (*See, e.g.*, ECF No. 72-15 at 2 (presenting an email from Defendant to Plaintiff on February 2, 2010, after the New Jersey entity was canceled and Plaintiff reincorporated in Florida, regarding a warning letter from the FDA)).

Defendant next contends that "[e]ven assuming *arguendo* that a Florida billing address on two purchase orders from [the New Jersey entity] makes those two orders valid contracts between [Defendant] and [Plaintiff]," such purchase orders do not meet the "statutory subject matter jurisdiction minimum to sustain an action in the District of New Jersey." (ECF No. 97 at 7 n.8). This argument is without merit. The question before the Court is not whether two purchase orders meet the statutory subject matter jurisdiction minimum, but rather whether the evidence before the Court shows that Plaintiff is the de facto successor or a mere continuation of the New Jersey entity. Having continued to engage in business with Plaintiff with the knowledge that its address changed

8

from New Jersey to Florida, and without raising any concerns in connection with such, Defendant's actions lean towards a finding that the first factor weighs in Plaintiff's favor.[4]

Moreover, the New Jersey entity's registration was canceled on October 2, 2009, (ECF No. 73-1 at 64), only thirty-five days after Plaintiff's effective date of incorporation in Florida.[5] (*Id.* at 57). The reason for cancellation of the New Jersey entity is listed as "business moved to another state." (*Id.* at 64). Although Plaintiff has not provided the Court with formal documentation as to whether it assumed the liabilities of the New Jersey entity, Plaintiff maintains in its papers and represented during oral argument that Plaintiff has and will continue to assume such liabilities. (ECF No. 94 at 4; Tr. 27:22-28:1, 32:10-33:12, 36:6-22). Finally, Plaintiff's "three Members/officers continued as the members, officers[,] and employees of [Plaintiff] without any change in ownership interest or business capacity." (ECF No. 94 at 4).

Defendant contends that "the analysis of whether the continuation/de facto merger theory applies does not begin unless there first is a written transaction between the two entities." (ECF No. 97 at 3). Although Defendant cites a number of cases where a writing existed between two entities, Defendant does not identify any precedent indicating that such a writing is required. In

---

[4] Defendant also argues that "[t]here is not one purchase order sent by [Plaintiff] to [Defendant] that was filled. To the contrary, every purchase order that was filled . . . [was] on [the New Jersey entity's] letterhead[.]" (ECF No. 97 at 7). Although the Court recognizes that the September 11, 2009 purchase order contains the New Jersey entity's contact information at the bottom of the page, the billing address lists Plaintiff's Florida address. (ECF No. 72-12 at 22). Thereafter, Defendant affirmatively invoiced Plaintiff for Drug Products at its Florida address. (ECF Nos. 72-13 at 99; 72-17 at 54). Defendant clearly knew that Plaintiff's address had changed, and yet continued to do business with Plaintiff, as it had with the New Jersey entity since at least 2008. (*See generally* ECF Nos. 72-12; 72-13; 72-17). Accordingly, the Court finds Defendant's argument without merit.

[5] Although Defendant argues that cancellation of an LLC is very different than dissolution of an LLC, (ECF No. 97 at 5), there is no dispute that the New Jersey entity ceased ordinary business operations and no longer existed after October 2, 2009.

determining whether a de facto merger or mere continuation theory applies, New Jersey courts consider the four factors enumerated above, none of which require a written contract or agreement. Because the Court found that such factors have been met, Defendant's argument is without merit.

Defendant further maintains that "in New Jersey, the doctrines of a de facto merger or continuation have only been applied as one of the exceptions to the general rule of corporate successor nonliability in asset acquisitions," and have not been applied to cases "where a de facto merger or continuation permitted the resulting entity to enforce contractual rights or bring tort claims belonging to the prior entity." (ECF No. 97 at 3). Although a New Jersey court opined that it was not "aware of [any] cases applying de facto merger for the benefit of the resulting entity," it also held that "our courts have not held that the doctrine is only relevant to liabilities, and in fact have defined the doctrine more broadly." *In re Hazardous Discharge Site Remediation Fund Innocent Party Grant Application Cliflake Assocs., LLC*, No. A-4685-11T4, 2013 WL 2217417, at *7 (N.J. Super. Ct. App. Div. May 22, 2013). More specifically, the New Jersey court "explained that a 'merger is defined . . . as the absorption by one corporation of one or more usually smaller corporations, which latter corporations lose their identity by becoming part of the larger enterprise.'" *Id.* (citations omitted).

The record indicates that Plaintiff was a successor to the New Jersey entity by virtue of a de facto merger or mere continuation. The Court finds that, under these specific set of facts, to hold that Plaintiff does not have standing to bring this action would promote form over substance and be fundamentally unfair. It was not until Plaintiff filed a complaint against Defendant that Defendant raised any issue with the New Jersey entity's relocation to and reincorporation in Florida. To the contrary, the evidence before the Court indicates that Defendant acknowledged Plaintiff as a successor or continuation of the New Jersey entity by continuing to provide the same

10

services to Plaintiff without objection. (*See generally* ECF Nos. 72-12; 72-13; 72-17 (documenting purchase orders, packing slips, and invoices between the New Jersey entity and Defendant, which are virtually identical to the purchase orders, packing slips, and invoices between Plaintiff and Defendant)). Moreover, the New Jersey entity no longer exists. Accordingly, the Court holds that Plaintiff possesses standing as the real party in interest in this lawsuit.[6,7]

### B. Rule 12(b)(6)

In addition to lack of standing, Defendant raises a number of arguments as to why Plaintiff's complaint should be dismissed for failure to state a claim upon which relief may be granted. Defendant first contends that Plaintiff "fails to allege that the specific Drug Products delivered to [the] New Jersey [entity] were adulterated upon tender of delivery or at any time thereafter." (ECF No. 72-1 at 19-20). More specifically, Defendant avers that Plaintiff "alleges only that the FDA issued warning letters which labeled unidentified batches of the Drug Products as adulterated," which warning letters are "merely advisory." (*Id.* at 20). Further, Defendant maintains that Plaintiff "fails to allege a casual nexus between the advisory warning letters which were issued months after the Drug Products were delivered to [the] New Jersey [entity] and its alleged damages." (*Id.*).

The Court finds that Plaintiff states a claim upon which relief may be granted. In *Silver v. Medtronic, Inc.*, the court rejected a similar argument raised by a defendant, opining that:

---

[6] Based on the foregoing, the Court need not address Plaintiff's remaining arguments as to why it maintains standing. Moreover, the Court need not consider whether the New Jersey entity is a necessary and indispensable party, as it has found that Plaintiff is a de facto successor or mere continuation of the New Jersey entity, and because the New Jersey entity no longer exists.
[7] For the same reasons as set forth above, the Court finds that Plaintiff also maintains standing to bring its tort claims against Defendant.

11

> Plaintiff has cited to the FDA warning letters, including three specifically outlining failures of CGMPs at the Minneapolis, Minnesota manufacturing facility. Plaintiff has further alleged that his Device was manufactured in that facility and was subject to those failures. Finally, Plaintiff alleged that his Device failed because it was "manufactured out of specification" and was "adulterated" due to the federal violations. Taking Plaintiff's allegations as true, as we must, he has certainly pled a plausible claim[.]

236 F. Supp. 3d 889, 898-99 (M.D. Pa. 2017). Although *Silver* involved a manufacturing defect claim, the same rationale applies here. Plaintiff has cited to two FDA warning letters, both concluding that the Drug Products Plaintiff purchased from Defendant were adulterated within the meaning of 21 U.S.C. § 351(a)(2)(B). (ECF Nos. 1-1 at 2; 1-2 at 1). Plaintiff has further alleged that Defendant manufactured the adulterated Drug Products since as early as 2007, which adulterated products were sold by Defendant to Plaintiff. (ECF No. 1 ¶¶ 20, 22, 29). Finally, Plaintiff alleged that Plaintiff suffered damages because it was unable to sell its inventory of the adulterated Drug Products, which were deemed unsalable by the FDA. (*Id.* ¶¶ 57-58). Taking Plaintiff's allegations as true, the Court finds Plaintiff has pled a plausible claim for relief. *See Silver*, 236 F. Supp. 3d at 898-899.

Defendant next avers that Plaintiff's contract and warranty claims[8] relating to transactions that occurred before August 6, 2009 are barred by the statute of limitations. (ECF No. 72-1 at 21-23). In response, Plaintiff maintains that the statute of limitations should be equitably tolled. (ECF No. 73 at 19-21).

---

[8] Defendant also contends that Plaintiff's warranty claims must fail because Plaintiff fails to allege that the Drug Products were defective upon tender of delivery. (ECF No. 72-1 at 25). The Court disagrees. Although Defendant contends that the FDA warning letters "were issued months after the last of the Drug Products were delivered to" the New Jersey entity, (*id.*), such letters make explicit reference to violations noted by the FDA during inspections in as early as 2007 and 2009. (ECF Nos. 1-1 at 1; 1-2 at 1-4). Plaintiff additionally makes these allegations in its complaint. (ECF No. 1 ¶¶ 14, 22, 25). Accordingly, the Court finds that Plaintiff has adequately stated a claim.

"An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued." N.J. Stat. Ann. § 12A:2-725(1).

> A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

N.J. Stat. Ann. § 12A:2-725(2). "Equitable tolling functions to stop the statute of limitations from running where the claim's accrual date has already passed." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1387 (3d Cir. 1994), *abrogated on other grounds by Rotkiske v. Klemm*, 890 F.3d 422 (3d Cir. 2018). Equitable tolling "may excuse [a] plaintiff's non-compliance with the statutory limitations provision at issue when it appears that (1) the defendant actively misled the plaintiff . . . and (2) this deception caused the plaintiff's non-compliance with the limitations provision." *Id.*

At the motion to dismiss stage, the Court is required "to accept all allegations of fact as true and draw all reasonable inferences in [Plaintiff's] favor." *Id.* Here, Plaintiff alleges that Defendant actively misled Plaintiff by failing to notify Plaintiff of Defendant's correspondence with the FDA, the FDA warning letters, or the FDA observation letters stating that the Drug Products were adulterated or otherwise in violation of CGMP regulations. (ECF No. 1 ¶¶ 10, 15-16, 18, 26-27; *see also id.* ¶¶ 21-22 (alleging further that Defendant willfully hid its FDA compliance issues from customers, and had systematic and ongoing FDA compliance issues since as early as 2007)). Plaintiff also alleges that this deception caused Plaintiff's non-compliance with the limitation provision. (*Id.* ¶ 46 ("[Plaintiff] would not have purchased the Drug Products if [Defendant] had timely made [Plaintiff] aware that: (i) the Drug Products were being manufactured pursuant to existing and ongoing CGMP violations as determined by the FDA; and/or (ii)

13

[Defendant's] continuing, willful failure to correct the CGMP violations over the course of several months would ultimately lead to the FDA deeming the Drug Products unsalable in interstate commerce.")). At this stage of the litigation, the Court finds that Plaintiff has adequately pled the doctrine of equitable tolling. Accordingly, Defendant's argument in this regard is without merit.

Defendant also maintains that the alleged oral agreement between the parties requiring Defendant to notify Plaintiff of any FDA observations, warning letters, or other correspondence is barred by the statute of frauds. (ECF No. 72-1 at 23). The New Jersey Statute of Frauds provides that:

> [A] contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker.

N.J. Stat. Ann. § 12A:2-201(1). "Goods" are defined as "all things . . . which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities . . . and things in action." N.J. Stat. Ann. § 12A:2-105. The alleged oral agreement between the parties requiring Defendant to notify Plaintiff of any FDA observations, warning letters, or other correspondence is clearly not a contract for the sale of goods. Accordingly, Defendant's argument is without merit.

Defendant next argues that Plaintiff's claims for negligence, fraud and deceit,[9] and breach of the covenant of good faith and fair dealing are duplicative of its claim for breach of contract.

---

[9] Defendant also argues that Plaintiff's fraud and deceit claim must be dismissed for failure to plead with particularity because "there are no allegations in the complaint regarding the circumstances constituting fraud including the identity of the individual who made [the] false representation, the date that the false representation was made, the identity of the individual to whom the false representation was made, or the location where the false representation was made." (ECF No. 72-1 at 24; *see also* ECF No. 74 at 9-10). Even under Federal Rule of Civil Procedure 9(b)'s heightened pleading requirement, however, the Court finds that Plaintiff's complaint puts

14

(ECF No. 72-1 at 23-25). Plaintiff contends that its claims are not duplicative, but rather are based upon duties which are separate and distinct from any contractual obligations. (ECF No. 73 at 22-24). Whether Plaintiff's claims are duplicative or not, a "claim of redundancy may be dealt with more soundly on a developed factual record, whether on summary judgment or in connection with focusing the issues preliminary to trial." *HUMC Opco LLC v. United Benefit Fund*, No. 16-168, 2016 WL 6634878, at *4 (D.N.J. Nov. 7, 2016); *see also Univ. Spine Ctr. v. Horizon Blue Cross Blue Shield of N.J.*, No. 16-9253, 2017 WL 3610486, at *4 (D.N.J. Aug. 22, 2017) ("Courts in this district and elsewhere have held that because a plaintiff may plead in the alternative, dismissal of a . . . claim as duplicative of [another] claim is generally not appropriate on a motion to dismiss."). Accordingly, Defendant's motion to dismiss is denied on these grounds, but without prejudice so that such contentions may be renewed in the context of summary judgment or at trial.

Finally, Defendant avers that Plaintiff cannot state a claim for violations of the New Jersey Consumer Fraud Act ("NJCFA") because Plaintiff is not a consumer. (ECF No. 72-1 at 25). "To bring a NJCFA claim, [p]laintiffs must demonstrate that they are 'consumers' . . . . A 'consumer,' while not defined by the NJCFA, has been described as 'one who uses (economic) goods, and so diminishes or destroys their utilities.'" *Viking Yacht Co. v. Composites One LLC*, 496 F. Supp. 2d 462, 473 (D.N.J. 2007) (citations omitted), *aff'd*, 385 F. App'x 195 (3d Cir. 2010). "A business entity can qualify as a member of the public, or 'person,' when it is in a consumer-oriented situation. In determining whether the NJCFA applies, the Court should look to the character of

---

Defendant on sufficient notice of its fraud claim. Accordingly, Defendant's argument is without merit. *See Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984) ("Rule 9(b) requires plaintiffs to plead with particularity the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior.").

15

the transaction and not to the identity of the purchaser." *Id.* at 474. "Under New Jersey law, 'purchasers of wholesale goods for resale are not consumers within the meaning of the NJCFA.' However, New Jersey courts have found that businesses who purchase and use products are 'consumers' under the NJCFA." *Id.*

Here, although Plaintiff correctly argues that a business may be considered a consumer under the NJCFA, a business only "qualif[ies] as a member of the public and consumer when it acts as a consumer . . . . [A] commercial reseller of goods is not a consumer and cannot sue under the NJCFA." *World Express & Connection, Inc. v. Crocus Investments, LLC*, No. 15-8126, 2017 WL 4516465, at *4 (D.N.J. Oct. 10, 2017). Plaintiff expressly states in its complaint that it "would be supplying the Drug Products manufactured by [Defendant] to its customers[.]" (ECF No. 1 ¶ 9; *see also id.* ¶ 6 ("[Plaintiff's] general business model involves supplying drug products to pharmacy chains, wholesalers, and distributors."), ¶ 32 ("The ordinary purpose of said Drug Products is for distribution into interstate commerce (including to pharmacies within this District for distribution to District residents).")). In other words, Plaintiff expressly identifies itself as a reseller of Defendant's Drug Products. Accordingly, Plaintiff is not considered a consumer under the NJCFA and Count I of its complaint must be dismissed.

## V. <u>CONCLUSION</u>

For the foregoing reasons, Defendant's motion to dismiss is granted in part and denied in part. An appropriate Order accompanies this Opinion.

DATED: June 20, 2018

**CLAIRE C. CECCHI, U.S.D.J.**